INGRAHAM, J. (dissenting). I do not concur with Mr. Justice McLAUGHLIN. The clause of article 11 of the mortgage provides that:

"Whenever the mortgagor shall tender or cause to be tendered to the trustee, and whether before or after the maturity thereof, any of the underlying bonds, * * * the trustee, in exchange therefor, shall authenticate and deliver to the mortgagor, or on its order, refunding mortgage bonds to a face amount equal to the face amount of the underlying bonds so received by the trustee. * * * Unless canceled in accordance with the foregoing provisions hereof, and until so canceled, all underlying bonds delivered to the trustee shall be held by the trustee, without impairment of the lien of such underlying bonds, as additional security under this indenture, and upon the trusts herein declared; and interest on the underlying bonds, when and as received, shall forthwith be paid to the mortgagor by the trustee."

I think it was here intended that the trustee should not be required to deliver refunding bonds except when bonds which were valid and which could be held by the trustee as additional security for the bonds issued under this mortgage were delivered. After a bond has been paid by the obligor and actually canceled, it is no longer, strictly speaking, a bond, and what this provision of the mortgage intended to provide, as it seems to me, was that the underlying bonds for which a refunding bond was to be issued was a live bond which could be held by the trustee as additional security for the obligation issued under this mortgage. The parties must be assumed to have contracted in relation to the existing situation and the provisions of the mortgage to secure the underlying bonds. The provision that the lien of the underlying bonds for which refunding bonds were issued should be continued in the hands of the trustee as security for the refunding bond was important for the security of the bonds issued under this mortgage for such underlying bonds which had been delivered to the trustee and was held by it would be entitled to participate in any foreclosure of the mortgage given to secure the underlying bonds. If but part of the underlying bonds had been paid off, then it would have been an important additional security to the refunding bonds to allow the trustee to participate in the proceeds of any sale under the mortgage to secure the underlying bonds. I do not think, therefore, that the defendant was bound to deliver a refunding bond except upon delivery to it of a bond which was an actual existing obligation and which was secured by one of the underlying mortgages.

I think, therefore, that the defendant is entitled to judgment.

HOUGHTON, J., concurs.

---

### KELLY v. HUDSON COS.

(Supreme Court, Appellate Term. January 21, 1910.)

1. MUNICIPAL CORPORATIONS (§ 801*)—SIDEWALKS—RIGHT OF CHILD TO PLAY THEREON.

It is not unlawful or negligent for children on the sidewalk to play, and they are entitled to the same protection as if using the sidewalk for the ordinary purpose of travel.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1660–1665; Dec. Dig. § 801.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. NEGLIGENCE (§ 35*)—ABUTTING OWNER—CONDITION OF PREMISES—CARE AS
   TO CHILDREN.
      While an abutting property owner is not bound to make premises a safe
   playground for children, yet where he knows, or might reasonably antici-
   pate, that children would play near his premises, he must exercise such
   care as·would at least protect them from hidden danger; and where chil-
   dren were playing on a sidewalk adjacent to defendant's premises, to the
   knowledge of its foreman, it was the foreman's duty to warn them of the
   danger of leaning against a hanging grating, 28 inches high, covering an
   opening to the basement, or to guard against the danger by securely
   fastening the grating, and defendant was liable for his failure to do so,
   resulting in the fall of one of the children into the basement, causing his
   injury.
      [Ed. Note.—For other cases, see Negligence, Cent. Dig. § 54; Dec. Dig.
   § 35.*]

3. APPEAL AND ERROR (§ 1004*)—QUESTIONS OF FACT—AMOUNT OF DAMAGES.
      The jury's award of damages for injuries to a child will not be held ex-
   cessive on appeal, where that can only be done by disregarding the evi-
   dence of the child's mother, which is not so improbable as to compel dis-
   belief.
      [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3944–
   3947; Dec. Dig. § 1004.*]

Appeal from City Court of New York, Trial Term.

Action by James Kelly, an infant, against the Hudson Companies.
From a judgment for plaintiff, and an order denying a new trial, de-
fendant appeals. Affirmed.

Argued before GIEGERICH, DAYTON, and LEHMAN, JJ.

Thatcher, Simpson & Bartlett (Thomas D. Thatcher, of counsel),
for appellant.

Charles Steckler (Levin L. Brown, of counsel), for respondent.

LEHMAN, J. The plaintiff, a child two years old, was playing on
the street with his brother. He leaned against a hanging iron grat-
ing, which was suspended from the top of an opening in the defend-
ant's premises abutting on the street. The grating apparently gave
way, and the boy fell through the opening into the cellar. The de-
fendant claims that this opening was only 28 inches high, that the
grating weighed 100 pounds, and was usually securely fastened, and
was unfastened that morning five hours before the accident only to
allow the removal of heavy goods from the cellar. The defendant's
foreman knew that the children were playing about the premises,
and claims that he told them several times to go away, but does not
claim that he warned them of any danger. Upon these facts the jury
brought in a verdict for the plaintiff, and the defendant appeals on
the ground that no negligence on the part of the defendant has been
shown.

While the plaintiff's witnesses state that the grating was four feet
high and deny that any goods were being moved at the time, I think
that the defendant's testimony on these points was more accurate and
more credible, and if that testimony, if believed, is sufficient to nega-
tive as a matter of law the alleged negligence of the defendant, then
the defendant might argue that the verdict is against the weight of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

120 N.Y.S.—49

evidence. It seems to me, however, that even from the defendant's testimony the jury might well draw the inference that the defendant has not complied with its duty of using reasonable care to protect a child lawfully using the street, from injury. "It is not unlawful, wrongful, or negligent for children on the sidewalk to play" (McGarry v. Loomis, 63 N. Y. 104, 108, 20 Am. Rep. 510), and the plaintiff was entitled to the same protection as if he were using it for the ordinary purposes of travel (McGuire v. Spence, 91 N. Y. 303, 43 Am. Rep. 668). That duty does not impose upon the abutting property owner the burden of making his premises a safe playground for children. He is not liable, for instance, for failure to place a railing or gate across a stairway lawfully erected to his cellar. White v. Daniels, 39 App. Div. 668, 57 N. Y. Supp. 305; Rothlein v. Stajer, 88 N. Y. Supp. 921. Where, however, the defendant knew or might reasonably anticipate that children would play near his premises, he must exercise such care as would at least protect them from hidden danger. In the case of Cleary v. Blake, 14 App. Div. 602, 43 N. Y. Supp. 1115, a child fell through a door that had been apparently closed, but not securely fastened. The court held that, since the defendant had no reason to anticipate that a boy would lean against the door, he was under no duty to see that it was securely fastened; but if they, his employés, "could reasonably have anticipated that a boy would stop and lean or press against this door, common prudence required that they should see to it that the door was not left so slightly fastened as readily to open and permit one to be thrown to the cellar floor, which was several feet below the level of the alley."

It seems to me that this is exactly the situation presented by this case. The opening was only 28 inches high, and the defendant could not have anticipated that any person except a small child would fall through, even if he leaned against it. Its foreman, however, knew that these children played there, and, though he claims that he sent them off, they deny this, and in any event the foreman knew that they kept returning. Common prudence, therefore, required him to warn them of the danger to which this small boy was exposed, or required him to guard against the danger by securely fastening the grating. He had no right to leave it, in a position where a child might lean against it, so insecurely fastened that it gave way and precipitated the child into the cellar.

The appellant also claims that the damages are excessive. Concededly they are excessive only if the testimony of the plaintiff's mother is to be disregarded. Her story is not so improbable that we are forced to believe it untrue. The jury saw her and the child, and could judge of its truth better than we.

The judgment should be affirmed, with costs. All concur.